**ESTATE OF Jane DOE, and
John Doe, Plaintiffs,**

v.

**VANDERBILT UNIVERSITY,
INC., et al., Defendants.**

No. 3:92–0591.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 24, 1993.

Patricia Dean, A. Bruce Jones, Holland & Hart, Denver, CO and Abby Rose Rubenfeld, Nashville, TN, for plaintiffs.

Patricia T. Meador, Bass, Berry & Sims, Nashville, TN, Leo M. Bearman and Edward M. Bearman, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, TN, for defendants.

### MEMORANDUM

WISEMAN, District Judge.

### I.

Before the Court are motions and cross-motions for summary judgment upon which exhaustive briefs (an obvious oxymoron) have been filed and on which the court heard oral argument on June 9, 1993. After consideration thereof and the entire file in the matter, the court is now ready to rule thereon.

### THE MOTIONS

Plaintiff moves for summary judgment on the affirmative defense of Tennessee Code Annotated § 29–26–116(a)(3)[1] asserted by the American Red Cross (ARC).

ARC cross-moves for summary judgment based on the same statute.

Vanderbilt University Medical Center (Vanderbilt) moves for summary judgment on plaintiffs' claim that Vanderbilt was negligent in failing to notify plaintiffs and others who received blood prior to 1985 (when HIV testing of blood before transfusion was begun) that they might have contracted the HIV virus through such transfusions. Vanderbilt's motion is based on the statute of repose as well as Plaintiffs' failure to support their allegation of negligence with an affidavit of a medical specialist from Tennessee or a contiguous state.

### THE UNCONTESTED FACTS

On August 28, 1984, the plaintiff, Jane Doe, was admitted to Vanderbilt for jaw surgery. The plaintiff received four units of blood during the surgery, nonspecifically supplied to Vanderbilt by the ARC.

Jane Doe became pregnant and gave birth to a girl. The child was diagnosed and died on November 25, 1989 of pneumocystis carinii pneumonia, an AIDS-related disease. On that same day, Jane Doe learned that she too was infected with the HIV virus. It was not until December 7, 1989, that plaintiff discovered that she had received the transfusion during her jaw surgery in 1984. Jane Doe died on April 30, 1992.

In the early 1980s, the HIV virus had not received the national attention or medical study that it has today. It was not until 1985 that the Food and Drug Administration approved a blood screening test for the HIV virus. In an attempt to enhance prevention and awareness of the HIV virus, the ARC implemented a program in 1986 called "Lookback." The program was designed to notify persons who had received blood prior to 1985 of their possible exposure to HIV and to encourage them to be tested. In reality, the ARC did not contact every blood recipient prior to 1985; instead, it contacted only individuals who had been transfused with the blood of donors now known to be HIV positive. In March of 1987, the Center for Disease Control (CDC) issued a report urging physicians to offer HIV testing to patients who had received a blood transfusion prior to 1985. Neither Vanderbilt nor the ARC notified Jane Doe that she might have been infected in 1984.

### II.

### DISCUSSION

■ Although these questions have been presented in several other states under similar statutes, they are of first impression in Tennessee. Resolution of these motions requires a novel determination of Tennessee law, and it may well be dispositive of this litigation as well as other that may arise.

---

1. Tennessee Code Annotated § 29–26–116(a)(3) is the statute of repose of three years from the date of the alleged act or omission of malpractice.

For these reasons, this court will certify an appeal from this ruling under 28 U.S.C. § 1292(b), and the Sixth Circuit Court of Appeals may well wish to certify the questions to the Tennessee Supreme Court. In the meantime, this court will give its best efforts to the matters.

The statute of repose asserted by both ARC and Vanderbilt was passed as a part of the Medical Malpractice Review Board and Claims Act of 1975. Sections 29–26–101 through 114 of the Tennessee Code were repealed in 1985, but the statute of repose, section 116, was not repealed. The repealed sections must be looked to for definitions and understanding of those unrepealed sections. *See, e.g., Burris v. Hospital Corp. of America,* 773 S.W.2d 932, 934 (Tenn.App.1989).

Section 102(6) defines a "medical malpractice action" as an "*action for damages for personal injury or death as a result of any medical malpractice by a health care provider.* . . ." Tenn.Code Ann. 29–26–102(7) (1980) (emphasis added). The definition went on to specifically exclude an "action for damages as a result of negligence of a health care provider when medical care by such provider is not involved in such action." *Id.* In Section 102(4), "health care provider" was defined to include, but not be limited to, "physicians (including osteopaths), dentists, clinical psychologists, pharmacists, optometrists, podiatrists, registered nurses, physicians' assistants, chiropractors, physical therapists, nurse anesthetists, anesthetists, emergency medical technicians, hospitals, nursing homes and extended care facilities." *Id.* § 29–26–102(4).

Thus, resolution of these motions requires a determination of whether: (1) ARC is a "health care provider"; (2) if so, whether the provision of blood to Vanderbilt hospital non-specifically to any given patient is "medical care"; and (3) the decision of Vanderbilt (an obvious health care provider) not to notify recipients of blood before 1985 of the possible risk of AIDS was the provision of "medical care."

## ARC AS A "HEALTH CARE PROVIDER"

Jane Doe received her transfusion on August 28, 1984. Therefore, if ARC is a health care provider, and if the sale of the blood to Vanderbilt was a provision of medical care, then any negligence in the provision would be subject to the three-year bar of the statute of repose. *Id.* § 29–26–116(a)(3).

In the expressly non-exclusive listing of "health care providers" in the 1975 Act, "blood banks" were not included. However, in section 121 of the same Act, an administrative fee of varying amounts was assessed against different classifications of "health care providers" and the following language appeared:

(4) *An annual fee not to exceed one hundred dollars ($100) shall be charged all other hospitals and such institutions as nursing homes, ambulatory surgical treatment centers, home health agencies, health maintenance organizations, blood banks, and other similar health care institutions.* Id. § 29–26–121(a)(4) (emphasis added).

Defendant ARC cites as further evidence of legislative intent an amendment to the Uniform Sales Act passed by the legislature in 1967. This Act, generally referred to as the "blood shield" law, defines the functions of a blood bank as "medical services:"

The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues (such as corneas, bones, or organs), whole blood, plasma, blood products, or blood derivatives. Such human tissues, whole blood, plasma, blood products, or blood derivatives shall not be considered commodities subject to sale or barter, and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a *medical service. Id.* § 47–2–316 (emphasis added).

From the above, it seems clear that the Tennessee Legislature has considered blood banks such as the ARC "health care providers." There are well-reasoned cases from other states interpreting the apposite statutes to the contrary.[2] However, none of these statutes included the express labeling

---

2. *See, e.g., Miles Lab. v. Doe,* 315 Md. 704, 556 A.2d 1107 (1989) (certified question from federal

of "blood banks" as "health care providers" as was found in the Act here, which also created the statute of repose.

Having answered question (1) in the affirmative—ARC is a health care provider—I proceed to question (2): is the nonspecific transfer of blood to Vanderbilt a "medical care"? Again, there are cases on both sides of this question from other jurisdictions interpreting their particular statutes. In interpreting the present statute, however, this court must keep in mind the obvious intent of the Tennessee medical malpractice statue to give special treatment and protection to, and establish a special burden of proof and manner of determining the appropriate standard of care for, the medical professions.

Plaintiff insists here that in order for an action to be characterized as medical malpractice, a doctor patient-relationship must exist. *Bradshaw v. Daniel,* 854 S.W.2d 865, 870 (Tenn.1993). The ARC responds that there are many situations in which the medical professional never sees or knows the patient, such as radiologists and pathologists, yet a physician-patient relationship exists.

The plaintiff claims here that the ARC was negligent as a manufacturer of blood, not as a health care provider, in its screening procedures and in failing to establish protections that would have prevented the taking of HIV-infected blood and its subsequent transfer to Jane Doe. However, the determina-

tion of what questions to ask a potential blood donor, the screening procedures for identification of inappropriate donors, the tests that should be applied to blood samples, are all questions involving the exercise of medical judgment. This judgment, according to the affidavits before the court, is exercised by licensed physicians and nurses. It would be incongruous to hold the ARC to be a health care provider and not hold that its principal function was the provision of medical care.

It is inescapable, therefore, to this court that the three-year statute of repose applies to the plaintiffs' claims against ARC of negligence in their Fourth Cause of Action, that is, for negligence in formulating screening procedures and so on to prevent the receipt and transfer to Vanderbilt of HIV infected blood.

The same rationale applies with equal or greater force to the allegations of negligent provision against Vanderbilt. The hospital is a health care provider and gave Jane Doe blood in 1984 as a part of the medical care provided to her. Summary judgment must also be awarded to Vanderbilt on this claim of negligent provision.

## NEGLIGENCE IN FAILING TO NOTIFY PLAINTIFF

■ In plaintiffs' First Cause of Action, they allege negligence of both defendants in

district court of Maryland holding that ARC was not a health care provider); *Doe v. American Nat'l Red Cross,* 798 F.Supp. 301 (E.D.N.C.1992) (holding no physician-patient relationship between ARC and plaintiff; therefore North Carolina four-year statute of repose inapplicable); *Kaiser v. Memorial Blood Center,* 486 N.W.2d 762 (Minn.1992) (certified question from 8th Circuit to Minnesota Supreme Court holding blood banks not affiliated with hospital are not "other health care professionals" under Minnesota statute for purpose of medical malpractice statute of repose); *Doe v. American Nat'l Red Cross,* 500 N.W.2d 264 (Wisc.1993) (responding to certified question from 7th Circuit, holding blood bank not a health care provider); *Silva v. Southwest Fla. Blood Bank,* 601 So.2d 1184 (Fla.1992) (holding a blood bank is not a medical service and therefore medical malpractice statute was not applicable; also, court found that an average person could understand the meaning of diagnosis, treatment, or care in reference to a blood bank.). *But see Bradway v. American Nat'l Red Cross,* 263 Ga. 19, 426 S.E.2d 849 (1993) (certi-

fied question to Georgia Supreme Court from 11th Circuit; court held that Georgia statute of repose applied to action very similar to case at bar and so action was a malpractice action rather than one for ordinary negligence); *Gerald Wilson v. American Red Cross,* 600 So.2d 216 (Ala.1992) ("We agree with the South Carolina Supreme Court that the collection and processing of blood for transfusion is a medical service and that the Red Cross, as a blood collector and processor, should be treated as a professional."); *Smith v. Paslode Corp.,* 799 F.Supp. 960 (E.D.Mo.1992) (holding American Red Cross a "health care professional" providing health care services and, therefore, subject to medical malpractice statute of limitations); *Doe v. American Red Cross Blood Servs.,* 297 S.C. 430, 377 S.E.2d 323 (1989) (South Carolina Supreme Court responding to certified question from federal district court of South Carolina and holding that ARC is a "professional," and that collection and processing of blood for transfusion is a medical service.).

failing to notify them of Jane Doe's having received an HIV-infected transfusion in 1984. This failure led the Does not to take precautions to prevent the birth of their daughter in 1989. They sue for "wrongful birth" and the damages flowing therefrom. They allege a continuing duty on the part of both defendants.

In their Second Cause of Action, plaintiffs re-allege the failure to notify and the continuing duty to do so, and allege as damages the resultant failure of Jane Doe to seek and receive medical care for her condition.

In their Third Cause of Action they re-allege the breach of the continuing duty to notify and allege as damages the infliction of emotional distress and psychological injury.

Vanderbilt has moved for summary judgment on all three of these claims on the grounds (1) that plaintiffs have failed to support their claim with the affidavit of an expert from Tennessee or a contiguous state establishing a violation of the applicable standard of care and (2) that, in any event, the alleged negligence is barred by the statute of repose. Central to either of these grounds is the assertion that this is a medical malpractice action, that the decision not to notify those persons receiving transfusions before 1985 was a medical decision, and that the burden of proof provisions of medical malpractice actions and the special statute of repose apply.

Plaintiffs dispute this central assertion. They say that their allegation is one of common law negligence, that the decision not to notify was an administrative decision and a medical decision in Vanderbilt's concern for logistical difficulty. They further insist that Vanderbilt's asserted concern for the potential panic and emotional distress that such a notice might cause "rings hollow" in light of the publicity already existent, and that such a decision was more social and political than medical. *But See Hoemke v. New York Blood Ctr.,* 720 F.Supp. 45 (S.D.N.Y.1989), *aff'd,* 912 F.2d 550 (2d Cir.1990).

Vanderbilt insists that its decision was medical and should be judged by the standard of care established by what the industry was doing at the time. In support of this proposition, it cites the expert testimony offered by affidavits that no hospital in Tennessee nor contiguous states conducted such a notification program. *See Kozup v. Georgetown,* 663 F.Supp. 1048 (D.D.C.1987).

Certainly the standard of care is relevant to the issue of duty and breach thereof. Plaintiffs offer the affidavit of Dr. Marcus A. Conant, a California physician also licensed in North Carolina, expressing the opinion that in light of what was known about the disease in 1987 and 1988, it was unreasonable for Vanderbilt not to have notified all recipients of blood from 1981 to 1985, and especially those receiving blood in 1983, 1984, and 1985 because the disease would most likely still be latent in these persons. Dr. Conant also advances the fact that San Francisco hospitals did conduct such a notification program. Plaintiffs insist that a jury question exists on the standard of care and the question of breach thereof. Also relevant is the fact that the CDC issued an announcement in March 1987 that persons who had received blood from 1977 through March 1985 should consult with their physicians to determine whether they should be tested for HIV. This announcement received publicity in the Nashville area.

On the basis of the information before it, this court cannot say that Vanderbilt's decision not to notify was a medical decision and that it was related to "medical care" so as to invoke the Medical Malpractice special rules and statutes of limitations. Further discovery should proceed to explore what factors Vanderbilt considered in reaching its decision, such as what did ARC tell Vanderbilt, what did each defendant know, and when did each know it. Also, the number of notices that would have been required; the relative difficulty occasioned thereby; the known and anticipated frequency of HIV infections from transfusions of which Vanderbilt was aware, or in the exercise of reasonable care and diligence should have been aware, at the time of its decision are all factors that appear relevant to the issue of negligence.

For all of the foregoing reasons, summary judgment will be granted to both Vanderbilt and the ARC on the issue of negligent provision of blood. Summary judgment is denied

on the issues of failure to notify raised by plaintiffs' first three causes of action. An appropriate order will enter which includes the necessary certification under 28 U.S.C. § 1292(b).

## ORDER

For the reasons stated in the memorandum opinion filed contemporaneously herewith, summary judgment is granted to the American Red Cross and Vanderbilt on the issue of negligent provision of blood. Summary judgment is denied on the issue of failure to notify plaintiff.

Pursuant to the provision of 28 U.S.C. § 1292(b), I certify that this case involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.