## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE

_____

| | | |
|---|---|---|
| | ) | C. A. No. 01A01-9701-CV-00028 |
| **ROBERT T. IRVIN**, | ) | Montgomery Circuit Court No. C11-371 |
| | ) | |
| Plaintiff/Appellant. | ) | HON. JAMES E. WALTON, JUDGE |
| | ) | |
| VS. | ) | **AFFIRMED AND REMANDED** |
| | ) | |
| **THE PLASMA CENTER, et al**, | ) | |
| | ) | OPINION FILED: |
| Defendants/Appellees. | ) | |
| | ) | |

**Robert T. Irvin**, Pro Se

**John T. Horton**, BREWER, KRAUSE, BROOKS & MILLS, Nashville, for Defendants/Appellees.

_____

### MEMORANDUM OPINION[1]

_____

### FARMER, J.

Robert T. Irvin sued the defendants for refusal to continue to accept his donation of plasma to The Plasma Center. Defendants filed a motion for summary judgment. The trial court entered an order stating that the complaint failed to state a cause of action and, that if Mr. Irvin's cause of action lies in medical malpractice, he failed to meet his requisite burden in responding to the defendants' motion for summary judgment. The motion for summary judgment was granted and Mr. Irvin appeals.

The complaint alleges that the plaintiff was verbally informed by the manager of The Plasma Center that he could no longer donate plasma to the center due to his elevated liver enzymes. It is further alleged that the plaintiff contacted the Center in January, 1996 and informed "Faye," who

---

[1] **Rule 10 (Court of Appeals). Memorandum Opinion**. -- (b) The Court, with concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

he describes as the manager, that he had been tested by a doctor for elevated liver enzymes and was found to be normal and/or without increased liver enzymes. It further alleges that the defendants were guilty of medical malpractice.

Mr. Irvin first argues on appeal that he was denied due process in that, acting *pro se*, the trial court was required to liberally construe his complaint. His status as a *pro se* litigant notwithstanding, in reviewing a motion to dismiss for failure to state a claim, the court should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and should not dismiss the complaint unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. ***Fletcher v. Board of Professional Responsibility***, 915 S.W.2d 448 (Tenn. App. 1995). ***See also*** rules 8.05 and 8.06 T.R.C.P. We do not find from review of this record that the plaintiff has been deprived of due process.

Giving a liberal construction to the complaint, it could be interpreted as alleging that Mr. Irvin was given an incorrect diagnosis when he was advised that he had elevated liver enzymes. Blood banks, such as the enterprise operated by the defendants in this case, have been held to fall within the definition of "health care providers" and therefore subject to the same burdens and receive the same protection as other health care providers under T.C.A. § 29-26-115.[2] ***Estate of Doe v. Vanderbilt Univ., Inc.***, 824 F. Supp. 746 (M.D. Tenn. 1993).

Although §§ 29-26-101 through 114 of the T.C.A. were repealed in 1985, the repealed sections must be looked to for definitions and understanding of those unrepealed sections. ***Doe v. Vanderbilt***, 842 F. Supp. at 748. In § 29-26-102(6), a medical malpractice action was defined as "an action for damages for personal injury or death as a result of any medical malpractice by a health care

_____

[2](a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

2

provider, whether based upon tort or contract law. The term shall not include any action for damages as a result of negligence of a health care provider when medical care by such provider is not involved in such action." The court stated in *Doe v. Vanderbilt* that "the determination of what questions to ask a potential blood donor, the screening procedures for identification of appropriate donors, the test that should be applied to blood samples, are all questions involving the exercise of medical judgment." *Id*. at 749.

In support of the motion for summary judgment, defendants presented the affidavit of Virginia Louise Watson, R.N. Her affidavit states:

1. I am over twenty-one years of age, competent to testify, and not laboring under any disabilities;

2. I am a registered nurse licensed to practice nursing in the State of Tennessee. I have been licensed as a nurse since 1981. I have been licensed to practice nursing in the State of Tennessee since 1991. I received my nursing degree from East Tennessee Baptist Hospital School of Nursing in 1981. Thereafter, I immediately sat for my boards and passed the examination in 1981. I am an employee of The Plasma Center and have been employed by The Plasma Center since September 30, 1994.

3. A copy of my resume is attached hereto as Exhibit A. By my education, training, and experience, I am familiar with the recognized standards of acceptable professional practice in Montgomery County, Tennessee, for the treatment and care of plasma donors such as Robert T. Irvin.

4. I have reviewed the complete file for Robert T. Irvin maintained by The Plasma Center, a copy of which is attached hereto as collective Exhibit B, and the complaint and affidavit of Robert T. Irvin filed in civil docket number C11-371. Based upon my review of that information and by my education, training, and experience, it is my opinion that the care and treatment provided to Robert T. Irvin by The Plasma Center was at all times appropriate and in keeping with the recognized standards of acceptable professional practice for the care and treatment of plasma donors in Montgomery County, Tennessee, under the same or similar circumstances.

5. The medical records attached hereto as collective Exhibit B show that on or before August of 1995 Robert T. Irvin approached the defendant Plasma Center regarding donating plasma. As part of the standard procedure at The Plasma Center, Mr. Irvin was pre-screened for eligibility. This pre-screening involves questioning the applicant regarding recent blood or plasma donations, alcohol or chemical usage, sexual activity, and medical history. Blood testing is performed to verify the applicants medical condition and a basic physical examination of the applicant occurs at the time as well. Specifically, the weight, temperature, and blood pressure of the

applicant is taken. Blood work is performed from the samples taken. This blood work involves testing hematocrit and protein levels. Blood samples are sent to an off-premises laboratory for processing. Additionally, the applicant is advised that they may be rejected by the Center if their blood tests turn positive or abnormal.

6. Mr. Irvin went through the above pre-screening process and was allowed to donate plasma. Thereafter, on several occasions as evidenced by the medical records, Mr. Irvin returned between August and November of 1995 to make additional donations. On November 27, 1995, Mr. Irvin presented to donate plasma. The above described physical examination was performed and blood samples taken. A plasma specimen was taken and held pending receipt of the results from Mr. Irvin's blood work. On December 5, 1995, the results of Mr. Irvin's blood work were received by telephone. The results indicated an elevated ALT level for his November 27, 1995, donation. On December 5, 1995, I personally mailed a notice to Mr. Irvin requesting he come to the Center to discuss his laboratory results. On December 7, 1995, Mr. Irvin returned to the Center. On that date he was informed of the elevated ALT levels and informed that this required his permanent rejection as a plasma donor by The Plasma Center. At the time of the meeting with Mr. Irvin on December 7, 1995, written results of the blood tests were not available; however, a telephone report had been received from the laboratory indicating the elevated ALTs.

7. ALTs measure the level of liver enzymes in the blood. Elevated ALTs are detrimental to the usability of plasma products. The Plasma Center is engaged in the business of acquiring plasma products for processing and use in the medical treatment of other persons. As such, The Plasma Center cannot use plasma products from donors with elevated ALTs because elevated ALT levels in plasma products represent a danger and can cause medical problems in subsequent recipients. Simply put, plasma from a donor with an elevated ALT level presents a risk of harm to any subsequent recipient. As such, it is appropriate to reject plasma donation by individuals with elevated ALT levels.

8. Based upon the test results received by The Plasma Center for Robert T. Irvin, Mr. Irvin was referred to his personal physician for further testing with regard to his medical condition.

Further affiant sayeth not.

Summary judgment is appropriate only when there are no genuine issues of material fact. The trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. If there is such a dispute, the motion must be denied. It is not the province of the court to weigh the evidence. However, once it is shown by the movant that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine material fact dispute. The respondent cannot simply rely upon his pleadings but

4

must set forth specific facts by using affidavits or other discovery material. Rule 56.03 T.R.C.P.; *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). No presumption of correctness attaches to decisions granting summary judgment as they involve only questions of law. On appeal, we must make a fresh determination as to whether the requirements of Rule 56 T.R.C.P. have been met. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991).

The affidavit of nurse Watson establishes that she is familiar with the recognized standard of acceptable professional practice in the community for the treatment and care of plasma donors such as Mr. Irvin and that the care and treatment provided was at all times appropriate and in keeping with the recognized standards. No countervailing expert affidavit or other evidence was submitted by the plaintiff. The trial court's grant of summary judgment on the allegation of medical malpractice is affirmed. Costs of this appeal are taxed to the appellant, Robert T. Irvin.

_____

FARMER, J.


_____

LILLARD, J. (Concurs)


_____

LEWIS, J. (Concurs)