S92Q1250. BRADWAY et al. v. AMERICAN NATIONAL
RED CROSS.
(426 SE2d 849)

HUNT, Presiding Justice.

In this certified question from the Eleventh Circuit Court of Appeals, we are asked:

Is a suit alleging that a not-for-profit blood bank was negligent in collecting and supplying human blood — including screening volunteer blood donors and testing blood for the presence of human immunodeficiency virus (HIV) — an action for medical malpractice and thus subject to Georgia's statutes of limitation and repose for medical malpractice actions, OCGA § 9-3-71?

We answer the question in the affirmative.

The relevant facts, as certified by the Eleventh Circuit, are as follows:

On April 7, 1983, doctors at the Emory University Hospital (Emory Hospital) transfused two units of whole blood into Carol Bradway after performing reconstructive surgery on Ms. Bradway. Emory Hospital obtained the blood from the American National Red Cross (the Red Cross), a charitable, not-for-profit organization operating "blood banks," i.e., facilities engaged in the collection of human blood from volunteer donors for distribution to organizations providing medical services. *See* OCGA § 31-22-1 (2) (1991). The Red Cross had no direct contact with Ms. Bradway but merely provided blood to Emory Hospital for use in Ms. Bradway's treatment.

On July 19, 1988, Ms. Bradway's doctor informed her that she was infected with the Human Immunodeficiency Virus (HIV). On April 19, 1989, Ms. Bradway and her husband, David Bradway, filed a complaint in Georgia state court alleging that the Red Cross was negligent in screening blood donors and in testing blood samples for the presence of HIV; specifically, the Bradways contend that the Red Cross, by not asking potential blood donors whether they are homosexuals, negligently failed to identify individuals possessing a high risk of being infected with HIV. The Bradways seek compensatory damages.

Pursuant to 28 U.S.C. §§ 1441, 1446 (1988) [footnote omitted], the Red Cross removed the Bradway's action to the United States District Court for the Northern District of Georgia. The Red Cross then moved the district court to dismiss the Bradway's action because, according to the Red Cross, Georgia's statutes of limitation and ultimate repose for medical malpractice suits barred their suit. *See* OCGA § 9-3-71 (1991 Cumulative Supp.) (Georgia's statutes of limitation and ultimate repose) [footnote omitted]; *see also id.* § 9-3-70 (1982) (defining "action for medical malpractice") [footnote omitted]. The Bradways responded that they did not bring an action alleging medical malpractice but rather "ordinary" negligence. The district court, concluding that under Georgia law "an action against a blood bank for the negligent collection and supply of human blood is an action for medical malpractice," granted the Red Cross' motion and dismissed the case.

The Bradways appeal the district court's dismissal of

their suit. The Bradways contend that the district court erred by holding that Georgia's statutes of limitation and ultimate repose for medical malpractice suits apply to a suit alleging ordinary negligence in screening blood donors and in testing blood samples. According to the Bradways, the district court incorrectly treated their case as an action alleging medical malpractice rather than "ordinary" negligence.

We are convinced that the steps involved in the collection, processing and distribution of blood by the Red Cross constitute a professional medical service. The procedures for the collection of blood, including donor screening and blood testing, are the product of professional medical expertise. Federal law mandates that screening procedures for determining the suitability of a donor as a source for blood are to be developed by a qualified physician or trained personnel under the supervision of a qualified physician. 21 CFR 640.3 (a). In compliance with Federal regulations, Red Cross physicians devise screening procedures intended to ensure the safety of the blood product and the transfusion process. A crucial part of the screening procedure developed by the physicians is the medical history interview. In this interview, prospective donors are asked questions designed to elicit information necessary for an effective evaluation of the donor; the formulation of these questions requires substantial medical knowledge and judgment.

The screening procedures developed by the physicians are carried out by licensed nurses, who also draw blood through phlebotomy, a medical procedure, and conduct a limited physical examination. Trained laboratory personnel serologically test the collected blood for blood type and a variety of infectious diseases. Blood may also be separated into different components, such as plasma and platelets, and processed. All blood products must be labeled and stored for ultimate distribution to medical facilities for transfusion purposes. Thus, by their very nature, the services provided by the Red Cross are medical services involving medical judgment.[1] Accordingly, the action brought against the Red Cross is one for medical malpractice under OCGA § 9-3-70 and is subject to our statute of limitation and repose, OCGA § 9-3-71.[2] Our conclusion in this regard is borne out by many

---

[1] There is, by implication, support for our position in the Code of Georgia. Most of the Red Cross personnel involved in the various steps we have outlined above must be licensed as professionals under Title 43 of the Georgia Code. In addition, under OCGA § 31-22-1 (2), the term "clinical laboratory" includes "blood banks which provide through their ownership or operation a system for the collection, processing, or storage of human blood and its component parts." Clinical laboratories are, under OCGA § 31-22-9.1 (a) (8), health care facilities.

[2] OCGA § 9-3-70 states:
    As used in this article, the term "action for medical malpractice" means any

decisions in. other jurisdictions.[3]

An examination of the claim itself bears out our determination that the case before us is one involving medical malpractice and not ordinary negligence.[4] The injury in this case did not result from negligence on the part of the administering nurses; there is no allegation that the nurses did not follow established procedure or that the nurses made mistakes in conducting the screening interviews. Compare *Candler Gen. Hosp. v. McNorrill,* 182 Ga. App. 107, 110 (354 SE2d 872) (1987). Indeed, it is specifically stated that the nurses followed standard Red Cross screening procedure; the claim is that the

---

claim for damages resulting from the death of or injury to any person arising out of:

(1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person; or

(2) Care or service rendered by any public or private hospital, nursing home, clinic, hospital authority, facility, or institution, or by any officer, agent, or employee thereof acting within the scope of his employment.

OCGA § 9-3-71 states:

Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which the negligent or wrongful act or omission occurred.

[3] See, e.g., *Smith v. Paslode Corp.,* _____ FSupp. _____ (E.D. Mo. 1992) ("[T]he uncontradicted evidence in the present case shows that nearly every step in the ARC's collection, processing and distribution of blood requires medical expertise."); *Doe v. American Nat. Red Cross,* _____ FSupp. _____ (W.D.Wis. 1992) (In applying broad construction, court said "it would be difficult to conclude that in collecting, processing, and distributing blood from donors for ultimate use in transfusions, defendant is not providing health care to others."); *United Blood Services v. Quintana,* 827 P2d 509, 523 (Colo. 1992) ("The acquisition and preparation of human blood for use in medical transfusion and the safeguarding of donated blood against contamination require the exercise of medical and scientific expertise by health care professionals in both the donor screening and the blood testing stages of the process. Any alleged negligence of a blood bank in performing those operations can occur only by reason of the action or inaction of its officers and employees functioning as health care professionals."); *Wilson v. American Red Cross,* 600 S2d 216 (Ala. 1992) (Red Cross is directly involved in the delivery of health care services since its activities are highly technical and require supervision and participation by a physician and other trained technical personnel.); *Tufaro v. Methodist Hosp.,* 368 S2d 1219, 1221 (La. App. 1979) (because a blood transfusion is a medical procedure, "the standard of care that must be utilized in collecting and transfusing blood is logically the same as that which applies to the actions of physicians and surgeons."); *Coe v. Superior Court,* 269 Cal. Reptr. 368, 371 (Cal.App. 1 Dist. 1990) (Blood banks provide a service "inextricably identified with the health of humans."); *Doe v. American Red Cross Blood Services, S.C. Region,* 377 SE2d 323, 326 (S.C. 1989) ("[S]ince the transfusion of blood is characterized as a skilled medical service, then we hold that the Red Cross, as a blood collector and processor, should be treated as a professional.").

[4] Policy reasons also support our decision in this matter. OCGA § 51-1-28 provides that the transfusion or other transfer of human blood is to be considered, not a sale of goods, but a rendition of medical services, thus precluding actions sounding in strict products liability. In *McAllister v. American Nat. Red Cross,* 240 Ga. 246 (240 SE2d 247) (1977), we held that the protection provided by this Code section applied not only to hospitals but also to entities like the Red Cross which supply blood for human use. The rationale for these "blood-shield statutes" is to protect competent and carefully operated blood banks helping to meet an urgent need for blood and blood products from "crippling legal liability." 240 Ga. at 249.

Red Cross did not ask questions that would allow it to identify high risk individuals. The problem, then, is with the questions, not the questioners. The injury complained of here stems from the alleged failure of the questions to provide for effective elimination of high risk donors. These questions are, as we have said, the product of medical knowledge and judgment.[5] Thus, again, we deal with medical malpractice, not with ordinary negligence.[6]

*Certified question answered in the affirmative. Clarke, C. J., Benham, Fletcher, Sears-Collins and Hunstein, JJ., concur.*

DECIDED MARCH 8, 1993 —
RECONSIDERATION DENIED MARCH 25, 1993.

*Parkerson, Shelfer & Connell, George H. Connell, Jr.,* for appellants.

*Kilpatrick & Cody, Judith A. Powell, Arnold & Porter, Bruce M. Chadwick, Julia L. Erickson,* for appellee.

---

[5] This is so even if, as the Bradways assert, the decision not to ask certain questions in screening donors was politically, ethically, or legally motivated. They would still have to demonstrate that the omission of those questions was both medically unsound and resulted in the acquisition of unsafe blood, both of which are medical issues.

[6] It would also seem that any consideration of the validity and effectiveness of the questions employed in the screening process would constitute a medical question requiring expert testimony. See, e.g., *Cherokee County Hosp. Auth. v. Beaver,* 179 Ga. App. 200 (345 SE2d 904) (1986).