A02A1786. KANE et al. v. SHOUP et al.

(580 SE2d 555)

ADAMS, Judge.

Joseph W. Kane and his parents, Joe Kane and Mary Kane, filed a malpractice lawsuit against Dr. Greg A. Shoup and Pickron Orthodontic Care, P.C. alleging misdiagnosis and mistreatment in connection with J. W.'s orthodontic treatment. The Kanes appeal the trial court's grant of summary judgment to Dr. Shoup and Pickron. Because we find that summary judgment was proper, we affirm.

Joe and Mary Kane brought J. W. to Dr. Shoup, who was then a solo practitioner, for treatment of an overbite, resulting, at least in part, from a small lower jaw. Dr. Shoup began treatment of J. W.'s condition in April 1992. In November 1995, Dr. Shoup joined Pickron and began practicing out of a Pickron office. After the move, J. W. was seen by Dr. Shoup and later by other Pickron orthodontists. The Kanes assert that throughout their son's treatment, they were assured that he was making progress and that the orthodontic treatment was effective. The last day Dr. Shoup saw or treated J. W. was in September 1997.

In November 1998, the Kanes' family dentist made a mold of J. W.'s teeth and, without the family's knowledge, sent it to Dr. J. W. Haddad, an oral surgeon, for his opinion on the effectiveness of Dr. Shoup's treatment. In a letter dated December 17, 1998, Dr. Haddad gave the opinion that J. W. demonstrated poor occlusion and that surgery might be required to correct the problem. The dentist showed

Dr. Haddad's letter to Mary Kane in December 1998. The Kanes then took J. W. to Dr. Lynwood Williams, a new orthodontist, for treatment. Dr. Williams also believed that the treatment J. W. had received from Dr. Shoup had not corrected his condition, and that J. W. would need surgery to correct the problem, along with additional periods of bracing.

1. The Kanes filed their complaint on November 1, 2000, more than three years after Dr. Shoup's last treatment of J. W., but less than two years after the Kanes learned of the problem with their son's teeth in December 1998. They assert that the trial court erred in finding that the statute of limitation had run on their claims before their suit was filed. They argue that the limitation period did not begin to run until they read Haddad's letter in December 1998 because that is the first time they learned that J. W.'s condition had not been corrected.

In Georgia, "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." OCGA § 9-3-71. Thus, the limitation period for medical malpractice claims runs from the date of injury. *Young v. Williams*, 274 Ga. 845, 846 (560 SE2d 690) (2002). The Kanes describe their action as one for misdiagnosis and continued mistreatment of J. W.'s condition, which they contend resulted in a progressive worsening of that condition. With allegations of misdiagnosis, the date of injury is generally considered to be the date of the misdiagnosis:

> [I]n general, in most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis; thus, the fact that the patient did not know the medical cause of his suffering does not affect the applicability of OCGA § 9-3-71 (a).

(Citation omitted.) *Williams v. Devell R. Young, M.D., P.C.*, 258 Ga. App. 821, 823 (575 SE2d 648) (2002).

But Georgia courts have carved out a limited exception in misdiagnosis cases when an injury occurs *subsequent* to the date of medical treatment, in which case the statute of limitation commences from the date the injury is discovered. *Walker v. Melton*, 227 Ga. App. 149, 151 (1) (489 SE2d 63) (1997); *Whitaker v. Zirkle*, 188 Ga. App. 706, 708 (1) (374 SE2d 106) (1988).

Here, the only direct evidence regarding the injury suffered by

J. W. is provided by Dr. Williams' affidavit.[1] Dr. Williams states that although J. W. was a candidate for surgery to treat his jaw condition at an earlier stage, the Kanes were not offered a surgical option. Rather, Dr. Williams states that "Dr. Shoup and Pickron instead embarked upon an extensive, expensive and time-consuming course of treatment with braces for a number of years, which ultimately provided little, if any, benefit to the patient, and which in fact was not in any way reasonably designed to address the fundamental problem of [J. W.'s] lower jaw condition." Dr. Williams then opines that Dr. Shoup's treatment did not address J. W.'s primary condition and ultimately delayed the correction of his lower jaw condition. Thus, Dr. Williams' evidence demonstrates only that J. W.'s existing condition was misdiagnosed and mistreated, and that condition was the same one that existed at the time the Kanes first sought treatment from Dr. Shoup. Dr. Williams does not assert that any new injury occurred.

Accordingly, this case falls under the general rule for misdiagnosis cases, and the date of injury must be considered to be the date of Dr. Shoup's alleged misdiagnosis. The trial court, therefore, properly found that the Kanes' claims were time-barred as they were filed more than two years after Dr. Shoup last saw J. W. See *Williams v. Devell R. Young*, 258 Ga. App. at 824; *Hughley v. Frazier*, 254 Ga. App. 544, 546 (1) (562 SE2d 821) (2002) (physical precedent only); *Surgery Assoc. v. Kearby*, 199 Ga. App. 716, 718 (405 SE2d 723) (1991).

The cases upon which the Kanes rely are all distinguishable because in those cases there was sufficient evidence to present at least a jury question as to whether an injury occurred subsequent to treatment. See, e.g., *Walker v. Melton*, 227 Ga. App. at 150 (1) (evidence of increased compression of vertebra after doctor misread x-rays, resulting in the failure of spinal ligament and the destabilization of plaintiff's spine); *Zechmann v. Thigpen*, 210 Ga. App. 726 (437 SE2d 475) (1993) (glaucoma developed after doctor failed to properly diagnose initial eye condition); *Whitaker v. Zirkle*, 188 Ga. App. at 708 (1) (evidence of subsequent metastasis of cancerous cells at site of original misdiagnosed biopsy).

2. The Kanes next argue that the trial court erred in granting summary judgment because issues of fact existed as to whether fraud

---

[1] Mary Kane also testified regarding further discussions she had with Dr. Williams about a window of opportunity to avoid surgery that Dr. Shoup's treatment missed. But that testimony is hearsay and, thus, had no probative value and is inadmissible for consideration on motion for summary judgment. *Erickson v. Hodges*, 257 Ga. App. 144, 146 (570 SE2d 420) (2002). Nevertheless, even if that evidence were accepted, it does not present evidence of a new injury subsequent to medical treatment. At most, it constitutes evidence of a failure to correct the previous misdiagnosis. See *Frankel v. Clark*, 213 Ga. App. 222, 224 (444 SE2d 147) (1994).

by Dr. Shoup and Pickron tolled the statute of limitation. They assert that they were misled by assurances from Dr. Shoup and other Pickron orthodontists that the treatment had been successful, and that the doctors should have told them that the treatment was unsuccessful.

Actual fraud, through nondisclosure of a known injury or through acts to conceal the injury, which deters or debars the bringing of the action, tolls the running of the statute until discovery of the fraud. OCGA § 9-3-96; *Miller v. Kitchens*, 251 Ga. App. 225, 226 (a) (553 SE2d 300) (2001). Fraud sufficient to toll the statute of limitation requires:

> (1) actual fraud involving moral turpitude on the part of the defendant; (2) the fraud must conceal the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; and (3) the plaintiff must have exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation.

*Miller v. Kitchens*, 251 Ga. App. at 226 (a). Where a confidential doctor-patient relationship exists, such fraud may be constructive, and silence when there is a duty to speak can constitute fraud. See *Zechmann v. Thigpen*, 210 Ga. App. at 730 (5). Thus, while a physician has a fiduciary duty to inform his patient of any injury or negligent mistreatment, to establish fraud a plaintiff must present evidence that the physician knew that the plaintiff was injured in the ways plaintiff contends; that the physician knew that his violations of the standard of care caused such injuries; and that he intentionally concealed such fact. Id.

Here, the Kanes produced no such evidence that would toll the statute of limitation. The Kanes assert that Dr. Shoup and the other Pickron doctors must have known that the treatment was unsuccessful because that fact was immediately apparent to Dr. Haddad and Dr. Williams. But it cannot be presumed that the results of the treatment were fraudulently misrepresented or withheld "rather than negligently or possibly without fault." *Zechmann v. Thigpen*, 210 Ga. App. at 731 (5). Accordingly, the trial court properly found that the Kanes' claims were time-barred.

3. And because those claims were time-barred, we need not reach the Kanes' remaining argument that the trial court erred in finding that Pickron was not vicariously liable for Dr. Shoup's actions because he was an independent contractor. "[A] grant of summary judgment is to be affirmed if it is right for any reason. . . ." (Punctu-

ation omitted.) *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001).

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED MARCH 4, 2003 —
RECONSIDERATION DENIED APRIL 4, 2003 —

*Pursley, Howell, Lowery & Meeks, Kevin B. Buice, Audrey M. Rabinowitz*, for appellants.

*Goldner, Sommers, Scrudder & Bass, Jane C. Taylor, Ellen L. Ash, Smith, Gambrell & Russell, Matthew S. Coles, Samira Jones*, for appellees.