## A06A2118. GIBSON v. THOMPSON et al.
## A06A2146. KEYHANI v. THOMPSON et al.
### (642 SE2d 366)

MIKELL, Judge.

These companion cases were brought against Dr. Keith Thompson, M.D. and Vision Correction Group, Inc., d/b/a Emory Vision Correction Center, L.P. (Emory Vision), by two of Dr. Thompson's patients, each of whom suffered from deteriorated vision in the aftermath of LASIK surgery at Emory Vision. The trial court granted summary judgment to Dr. Thompson and Emory Vision in both cases on the ground that the actions were barred by the two-year statute of limitation. We affirm.

> On appeal from a grant of a motion of summary judgment, we review the evidence de novo, viewing it in the light most favorable to the non-movant, to determine whether the trial court erred in concluding that no genuine issue of fact remains and that the moving party is entitled to judgment as a matter of law.[1]

So viewed, the record shows that on June 11, 1997, Keyvan Keyhani visited Dr. Thompson for an initial consultation regarding LASIK surgery. On that visit, Dr. Thompson informed Keyhani that he might have a steepening of the cornea known as keratoconus, making him an unsuitable candidate for the surgery. Dr. Thompson told Keyhani that he would have to wait six months in order to determine whether his corneal condition was sufficiently stable. Keyhani returned to Emory Vision on November 6, 1997, at which time Dr. Thompson consulted his colleague, Dr. George Waring, about the case. The two doctors concluded that Keyhani's cornea had remained stable since June. Dr. Thompson again suggested that Keyhani should wait before going forward, but allowed Keyhani to make the decision whether to proceed or not. Keyhani said that "if [he could] do it now," he wished to proceed. Keyhani then received and read an informed consent packet concerning the procedure and signed and returned an acknowledgment of the same. Within a few months after the surgery, which took place on December 11, 1997, Keyhani's vision had deteriorated. Keyhani returned to Dr. Thompson and Emory Vision periodically for assistance with his vision problems.

---

[1] (Citation omitted.) *Bernath v. People Success, Inc.*, 274 Ga. App. 880 (619 SE2d 378) (2005).

In May 2000, Keyhani consulted an ophthalmologist in Evanston, Illinois, concerning his symptoms, which included ghosting, haloing, and distortion. The ophthalmologist told Keyhani that he should consult a corneal specialist. When Keyhani moved to the San Francisco area shortly afterward, Emory Vision helped him find a corneal specialist there, whom he consulted in December 2000. The technician administering the examination expressed surprise to Keyhani at the amount of curvature on the lower part of his cornea. The specialist then advised him that he had keratoconus and that the condition could not be treated by surgical means.

On April 29, 1998, Paula Gibson also visited Dr. Thompson for an initial consultation regarding LASIK eye surgery. On that visit, Dr. Thompson noted some corneal warpage, informed Gibson that there were some problems with her corneal topographies, and said that he was not sure if she would be a good candidate for the surgery. Dr. Thompson again consulted Dr. Waring in the course of the examination. Gibson concluded that both doctors "endorsed the procedure," and assumed that they "would not recommend the procedure if there was a problem." Gibson received and read an informed consent booklet on LASIK surgery and signed and returned an acknowledgment concerning the same. The LASIK surgery was performed the next day.

Soon afterward, Gibson moved to Colorado, where Dr. Thompson assisted her in finding another ophthalmologist, Britt Buckley, M.D., whom Gibson first saw in November 1998 concerning her deteriorating vision. By October 2000, Gibson's eyes manifested postoperative ectasia and corneal thinning, neither of which had been present at the time of her surgery.

On October 16, 2002, Gibson sued Dr. Thompson and Emory Vision for negligence, fraud, lack of informed consent, and battery. On December 6, 2002, Keyhani sued Dr. Thompson and Emory Vision under the same theories. Thompson and Emory Vision later moved for summary judgment against both plaintiffs on the ground that both suits were barred by the applicable two-year statute of limitation.[2] The trial courts granted the motions.

The statute of limitation governing medical malpractice actions is two years from the date of injury.[3] When a defendant's fraud has prevented a plaintiff from bringing suit, however, "the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."[4]

---

[2] See OCGA § 9-3-71 (a).

[3] Id.

[4] OCGA § 9-3-96.

Fraud sufficient to toll the statute of limitation requires: (1) actual fraud involving moral turpitude on the part of the defendant; (2) the fraud must conceal the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; and (3) the plaintiff must have exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation.[5]

Finally, in the context of a confidential doctor-patient relationship, "fraud may be constructive, and silence when there is a duty to speak can constitute fraud."[6]

The evidence is uncontroverted that both Keyhani and Gibson experienced deterioration in their vision in the months immediately after their operations. Pretermitting whether they were put on notice by such deterioration, however, neither Keyhani nor Gibson has adduced evidence that Dr. Thompson's alleged fraud prevented them from knowing of their claims in May 2000 and November 1998 respectively, when they consulted other eye specialists concerning their vision problems. Since both Keyhani and Gibson brought their actions more than two years after these visits, we conclude that the trial courts did not err when they granted summary judgment to Dr. Thompson and Emory Vision.[7]

*Judgment affirmed in both cases. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 22, 2007.

*Evert, Weathersby & Houff, Ivan A. Gustafson*, for appellants.
*Allen, McCain & O'Mahony, Hunter S. Allen, Jr., Gary R. McCain, Love, Willingham, Peters, Gilleland & Monyak, Jonathan C. Peters, Richard W. Brown, Ragland & Jones, Andrew E. Goldner*, for appellees.

---

[5] (Citation omitted.) *Kane v. Shoup*, 260 Ga. App. 723, 726 (2) (580 SE2d 555) (2003).

[6] (Citation omitted.) Id.

[7] Id. (because fraud cannot be presumed in the context of misrepresentations about medical treatment, plaintiffs' failure to produce evidence of fraud meant that the statute of limitation was not tolled).