A07A0221. BASKETTE et al. v. ATLANTA CENTER FOR REPRODUCTIVE MEDICINE, LLC et al.
(648 SE2d 100)

MIKELL, Judge.

David and Courtney Baskette (the "Baskettes"), husband and wife, appeal from the trial court's order granting partial summary judgment in favor of Atlanta Center for Reproductive Medicine, LLC (the "Center"), its doctors and employees. We affirm because the trial court correctly ruled that the statute of limitation expired prior to the filing of suit.

On appeal from a grant of a motion of summary judgment, we review the evidence de novo, viewing it in the light most favorable to the non-movant, to determine whether the trial court erred in concluding that no genuine issue of fact remains and that the moving party is entitled to judgment as a matter of law.[1]

So viewed, the record reflects that in February 2001 the Baskettes consulted the Center and James P. Toner, M.D., appellees herein, in order to pursue infertility treatment using in vitro fertilization ("IVF"). On March 29, 2001, David Baskette arranged with the Center to preserve and store his sperm, because he had cancer and he knew that future cancer treatments could render him sterile (in fact, he was found to be sterile in May 2002). Even though appellees knew

---

[1] (Footnote omitted.) *Gibson v. Thompson*, 283 Ga. App. 705 (642 SE2d 366) (2007); see also OCGA § 9-11-56 (c).

of David's condition, they failed to mark David's stored sperm to indicate that no more sperm could be obtained from the donor. On July 30, 2001, a Center technician thawed and used all of David Baskette's stored sperm in the Baskettes' first IVF attempt. This initial attempt at conventional IVF resulted in seven embryos, but attempted implantation of the embryos in August and September 2001 did not result in pregnancy.

The Baskettes, unaware that no more sperm remained, planned a second IVF attempt for the summer of 2002, and on May 24, 2002, Courtney Baskette underwent several medical procedures in preparation for this second attempt; these procedures were unnecessary, however, because the second IVF attempt was cancelled for lack of sperm. On June 13, 2002, Dr. Toner learned, and informed the Baskettes for the first time, that none of David's banked sperm was still available for further IVF attempts.

In their complaint filed May 17, 2004, the Baskettes sued the Center, its doctors and its employees,[2] alleging professional negligence, negligence, breach of contract, negligent misrepresentation, and breach of fiduciary duty, in connection with appellees' loss of David Baskette's stored sperm. The trial court granted partial summary judgment to appellees as to all claims for professional negligence, negligent infliction of emotional distress, negligence resulting in an inability to conceive, damages for professional negligence, damages for adoption expenses, noneconomic damages, and damages for negligent infliction of emotional distress, on the ground that these claims were barred by the expiration of the two-year statute of limitation applicable to claims for professional malpractice.[3] The trial court denied appellees' motion for summary judgment as to (1) Courtney Baskette's claims for unnecessary medical procedures performed on May 24, 2002; and (2) negligent misrepresentation (appellees' negligent failure to discover and disclose that David Baskette's sperm had been used and was no longer available for further IVF attempts).[4] Appellees have not challenged the trial court's rulings as to these claims, and thus they are not before this Court on this appeal.

---

[2] Named as defendants in the Baskettes' complaint were the Center, Dr. Toner, Lisa A. Hasty, M.D., Chad A. Johnson, Ph.D., and John and Jane Does (herein collectively referred to as the "appellees").

[3] OCGA § 9-3-71 (a). Although the trial court mentioned additional grounds for granting summary judgment on these claims, in light of our ruling herein we do not need to address these additional grounds.

[4] In an amended order issued February 9, 2006, after the Baskettes' notice of appeal was filed on January 26, 2006, the trial court denied appellees' motion for summary judgment as to the Baskettes' claim for breach of fiduciary duty (failing to mark David Baskette's sperm properly). As appellees correctly note, however, the trial court was without jurisdiction to issue the amended order, because the Baskettes' notice of appeal acted as a supersedeas, depriving

1. The trial court did not err in ruling that the Baskettes' claims for professional negligence were barred by the expiration of the two-year statute of limitation found in OCGA § 9-3-71 (a).[5] The injury alleged occurred on July 30, 2001, when all of David Baskette's frozen sperm was thawed and used in connection with the Baskettes' first attempt at IVF. Because the statute commences to run on the date of injury,[6] the limitation period had expired when the Baskettes' complaint was filed on May 17, 2004.

The Baskettes contend, however, that the statute of limitation for their medical malpractice claims did not start to run until June 13, 2002, the day they were informed that all of the banked sperm had been used. Under OCGA § 9-3-71 (a), however, "[i]njury, and not the discovery of injury, commences the running of the statute of limitation in cases of medical malpractice."[7] Thus, even though it was June 2002 before the Baskettes learned that no frozen sperm remained, the statute of limitation for their claims commenced to run on July 30, 2001, and expired two years later, thus barring their complaint filed May 17, 2004.[8] Because this case does not involve a misdiagnosis, the limited exception applicable to misdiagnosis cases does not apply.[9]

2. In an effort to avert the application of the two-year medical malpractice statute of limitation, the Baskettes attempt to characterize their claims against appellees as based on ordinary, rather than professional, negligence. This attempt must fail as a matter of

the trial court of jurisdiction to amend its original order of December 30, 2005. See *Upton v. Jones*, 280 Ga. 895, 896 (1) (635 SE2d 112) (2006) (the amended order is void and "therefore cannot be considered for purposes of this appeal") (citation and punctuation omitted).

[5] OCGA § 9-3-71 (a) ("Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred").

[6] See *Pogue v. Goodman*, 282 Ga. App. 385, 387-388 (1) (638 SE2d 824) (2006) (action for misplaced catheter filed August 2004 barred as untimely where injury occurred during surgery in August 2001, even though plaintiff did not discover catheter's faulty placement until October 2003).

[7] (Citation omitted.) *Miller v. Kitchens*, 251 Ga. App. 225, 228 (c) (553 SE2d 300) (2001) (action filed December 6, 1999, time-barred where plaintiff's injuries occurred in surgery performed in October 1997, even though plaintiff contended that he was unconscious and incapable of discovering injury until December 19, 1997; as no misdiagnosis was involved, the "discovery rule" did not apply).

[8] See *Young v. Williams*, 274 Ga. 845, 848 (560 SE2d 690) (2002).

[9] *Brown v. Coast Dental of Ga.*, 275 Ga. App. 761, 766 (1) (622 SE2d 34) (2005) (in a misdiagnosis case, "when the patient does not incur a compensable injury until *after* the misdiagnosis is made, the limitation period begins to run when symptoms of the injury first manifest themselves to the patient. This rule applies even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission") (citation, punctuation and footnote omitted; emphasis in original); *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002) (injury from misdiagnosis occurred and statute began to run when plaintiff began experiencing pain in February 1998, even though plaintiff did not discover cause of pain until September 1999).

law. "Whether an action alleges professional negligence or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill. It is a question of law for the court to decide."[10]

The Baskettes' claims are based on their allegation of appellees' negligence in using "conventional" IVF, rather than a different (and riskier) IVF method, known as "ICSI," in the first attempt undertaken on July 30, 2001. The Baskettes contend that the ICSI technique would not have used up all the stored sperm in the first IVF attempt. Which IVF method to use, however, is a question that involves the exercise of professional medical knowledge and judgment. Only through the testimony of a medical expert could the Baskettes attempt to show that the use of conventional IVF was not medically indicated; that another IVF method, ICSI, should have been used; that the ICSI technique would not have consumed all of David Baskette's stored sperm; and that therefore pregnancy for Courtney Baskette would have been achieved. The need for expert testimony to show lack of due care is one of the hallmarks of a medical malpractice claim.[11]

3. The Baskettes contend that their claim against appellees Chad A. Johnson, Ph.D., director of laboratory services at the Center, and the Center, as the employer of Johnson and of Margaret Philbert, the Center's medical technologist,[12] does not constitute a claim for medical malpractice, but only for ordinary negligence, because neither Johnson nor Philbert is a "professional" listed in OCGA § 9-11-9.1 (d) and thus claims against them are not subject to the expert affidavit requirements of OCGA § 9-11-9.1 (a). This argument is without merit.

The two-year statute of limitation found in OCGA § 9-3-71 applies to "an action for medical malpractice"; the term "action for medical malpractice" is defined in OCGA § 9-3-70 to include:

> any claim for damages resulting from . . . injury to any person arising out of: (1) . . . medical . . . service, . . . treatment, or care

---

[10] (Citation and punctuation omitted.) *MCG Health v. Casey*, 269 Ga. App. 125, 128 (603 SE2d 438) (2004) (claim based on doctor's decision to perform grip test rather than administering pain medications called into question doctor's professional judgment and skill and thus was grounded in professional negligence).

[11] See *Shirley v. Hosp. Auth. of Valdosta/Lowndes County*, 263 Ga. App. 408, 410 (1) (587 SE2d 873) (2003) (claim was for medical malpractice where jury would require expert testimony to determine whether hospital's nurse exercised due care in administering surgical solution); *Zwiren v. Thompson*, 276 Ga. 498, 500-501 (578 SE2d 862) (2003) (testimony of medical expert allows jury to make causal connection between defendant's alleged negligence and plaintiff's injury).

[12] Johnson and Philbert were responsible for freezing and thawing David Baskette's sperm and performing the fertilization procedures for the eggs obtained from Courtney.

*rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person; or (2) [c]are or service rendered by any . . . clinic, . . . facility, or institution, or by any . . . employee thereof acting within the scope of his employment.*

(Emphasis supplied.) The record makes clear that Johnson and Philbert were working as employees of the Center; that the Center was a medical facility; that Johnson and Philbert were involved in the process of thawing and using David Baskette's sperm in order to fertilize Courtney Baskette's eggs; and that they performed these technical functions within the scope of their employment and under the supervision of Drs. Toner and Hasty, both licensed medical doctors.

The Baskettes have not claimed that the IVF procedure conducted in July 2001, and the thawing and use of David Baskette's sperm in connection therewith, was performed negligently.[13] Indeed, it is uncontroverted that the July 2001 procedure was successful in generating seven embryos for later attempts at implantation. The injury complained of by the Baskettes arises out of the allegedly negligent decision by Dr. Toner to pursue conventional IVF, rather than the alternative ICSI. "[I]f a claim of negligence goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made, the claim sounds in professional malpractice."[14]

4. The Baskettes assert that appellees were negligent in failing to mark David Baskette's frozen sperm to indicate that no more sperm would be forthcoming from the donor. They view marking David's stored sperm as an administrative or routine act, the negligent performance of which would give rise to an action for simple negligence. Although it is true that "[a]dministrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence,"[15] nonetheless, the claimed injury — the use of David's stored sperm — still *arose out of*[16] appellees' decision to use

---

[13] See *Bradway v. American Nat. Red Cross*, 263 Ga. 19, 22-23 (426 SE2d 849) (1993) (where plaintiffs' injury – exposure to HIV – stemmed from alleged failure of Red Cross screening procedures to eliminate high risk donors effectively, and was not based on any failure of Red Cross workers to implement established procedures properly, claim was for medical malpractice, because screening procedures were the product of medical knowledge and judgment).

[14] (Citation omitted.) *MCG Health*, supra.

[15] Id.

[16] See OCGA § 9-3-70 (an "action for medical malpractice" includes claims "arising out of" medical treatment or care).

conventional IVF, a decision involving the exercise of medical skill and judgment.[17] Thus, the claim based on the failure to "flag" the stored sperm also sounds in professional negligence, because the doctor's decision to proceed with conventional IVF was the product of medical knowledge and judgment. If this decision was negligent, it was medical malpractice, not ordinary negligence.[18] Our 2006 decision in *Stafford-Fox* is directly on point and controls the outcome of this contention adversely to the Baskettes.[19]

5. Similarly, the trial court did not err in granting summary judgment for appellees as to the Baskettes' claims for their inability to conceive a child, adoption expenses, noneconomic damages, and negligent infliction of emotional distress. OCGA § 9-3-71 (a) applies broadly to "*all* claims arising out of a medical malpractice cause of action"[20] and "applies to both tort and contract theories of liability when the claim calls into question the conduct of a professional in his area of expertise."[21] Thus, contrary to the Baskettes' contention, this Court need not decide at this time whether negligent destruction of stored sperm results in a claim for personal injury or property damage. In either case, these claims brought by the Baskettes sound in professional medical malpractice and are barred by the running of the applicable statute of limitation.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 30, 2007 —
RECONSIDERATION DENIED JUNE 18, 2007 — ▮▮▮▮▮▮▮

*Smith & Jenkins, Wilson R. Smith, Westmoreland, Patterson, Moseley & Hinson, William C. Heard,* for appellants.

*Allen, Weathington & Reeves, Hunter S. Allen, Jr., Simuel F. Doster, Jr.,* for appellees.

---

[17] *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 672 (2) (639 SE2d 610) (2006) (nonprofessional staff's administrative lapse in failing to note in plaintiff's chart test results indicating plaintiff's possible B-12 deficiency gave rise only to an action for medical malpractice, because doctor's failure to diagnose B-12 deficiency involved exercise of medical skill and judgment).

[18] See *Bradway*, supra at 23; *Stafford-Fox*, supra.

[19] *Stafford-Fox*, supra.

[20] (Citations omitted; emphasis supplied.) *Knight v. Sturm*, 212 Ga. App. 391, 392 (2) (442 SE2d 255) (1994) (two-year statute of limitation applies to medical malpractice actions founded upon either tort or contract theories of liability).

[21] (Citation and punctuation omitted.) *Witherspoon*, supra at 613 (2) (claims for breach of express medical agreement, lack of informed consent, battery, and fraudulent misrepresentation). See also *Knight*, supra (claims based on fraudulent representations, fraudulent concealment of material information, breach of express and implied warranties, and breach of contract).