**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 29, 2014**

# In the Court of Appeals of Georgia

A14A0387. JOHNSON et al. v. JONES.

PHIPPS, Chief Judge.

Husband and wife DeRienzia and Vernice Johnson appeal the dismissal of their lawsuit against Michael Jones, M. D. Because the trial court correctly concluded that their claims were time-barred, we affirm.

On December 20, 2012, the Johnsons sued Jones for damages, delineating four counts in their complaint. Count One alleged that Vernice Johnson and Jones had entered into a patient-physician relationship; pursuant thereto, on June 11, 2006, Jones read a transvaginal ultrasound in order to diagnose Vernice Johnson's condition; Jones misinterpreted the ultrasound, thereby failing to exercise the requisite degree of skill and care; consequently, Jones misdiagnosed Vernice Johnson's normal intrauterine pregnancy as an ectopic pregnancy, which resulted in

its termination and a dilation and curettage procedure; as a proximate result of the negligence by Jones, Vernice Johnson endured pain and suffering. Count One cited that an affidavit of another physician was attached to the complaint for compliance with OCGA § 9-11-9.1 (a), applicable in professional negligence cases.

Count Two, as described in the complaint, was brought "to recover for Defendant's breach of his fiduciary duty." Count Two expressly incorporated specified allegations of Count One. Additionally, Count Two alleged that, on June 11, 2006, a patient-physician relationship existed between Vernice Johnson and Jones; that on that date, she underwent a transvaginal ultrasound, which was read by Jones; that Jones had a duty to properly diagnose her condition with a reasonable degree of care and skill; that the "physician-patient relationship Plaintiff Vernice Johnson had with Defendant gave rise to a fiduciary duty and Defendant's failure to correctly read the ultrasound that was performed violated his fiduciary duty to Plaintiff"; that Jones had a fiduciary duty to read the ultrasound in a manner that was not negligent; and that she suffered damages "proximately caused by Defendant's misdiagnosis of her pregnancy and breach of his fiduciary duty."

2

Count Three of the complaint incorporated previously stated allegations and charged Jones with "grossly negligent behavior" that entitled the Johnsons to punitive damages.

Count Four of the complaint incorporated previously stated allegations and claimed that Jones's negligence had caused DeRienzia Johnson the loss of consortium with his wife.

Jones filed a motion to dismiss, attacking all counts as premised upon a theory of medical malpractice, and hence, barred in light of the statute of repose set out in OCGA § 9-3-71. In pertinent part, that statute states:

> (a) Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.[1]

---

[1] Regarding any applicable statute of limitation, the Johnsons alleged in their December 20, 2012 complaint that they had timely filed a prior "original action" against Jones, but such "original action" had been dismissed by operation of law on June 25, 2012. See OCGA § 9-11-41 (e) (providing that an action is automatically dismissed if no written order is taken for a period of five years). The Johnsons took the position that their December 20, 2012 complaint was filed within the renewal period and that, therefore, the claims pursued in their December 20, 2012 complaint were not barred by any statute of limitations. See id. ("When an action is dismissed under [OCGA § 9-11-41 (e)], if the plaintiff recommences the action within six months following the dismissal then the renewed action shall stand upon the same footing, as to limitation, with the original action."). Notwithstanding, the Supreme

(b) Notwithstanding subsection (a) of this Code section, *in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.*[2]

(c) Subsection (a) of this Code section is intended to create a two-year statute of limitations. *Subsection (b) of this Code section is intended to create a five-year statute of ultimate repose and abrogation.*[3]

Jones argued that all counts of the Johnsons' complaint were barred by subsection (b) because the "negligent or wrongful act or omission" alleged – his misdiagnosis resulting from his negligent reading of the ultrasound – occurred in 2006, and the complaint was filed more than five years later, in 2012.

In response, the Johnsons agreed that any claim for medical malpractice was not viable after the expiration of the five-year statute of repose set forth in OCGA § 9-3-71 (b). Seeking to avert further application of that statute to their complaint, however, the Johnsons argued that their complaint included two distinct theories of

---

Court of Georgia has held that "the legislature never intended for the dismissal and renewal statutes to overcome the statute of repose." *Wright v. Robinson*, 262 Ga. 844, 846 (1) (426 SE2d 870) (1993); see *Macfarlan v. Atlanta Gastroenterology Assocs.*, 317 Ga. App. 887, 891 (1, 2) (732 SE2d 292) (2012) (noting that "the statute of repose controls any attempt to renew a medical malpractice action").

[2] (Emphasis supplied.)

[3] (Emphasis supplied.)

recovery: (i) breach of fiduciary duty, set forth in Count Two; and (ii) loss of consortium, set forth in Count Four.

The trial court granted Jones's motion, dismissing the complaint entirely. In this appeal, the Johnsons maintain that their complaint presented viable claims of breach of fiduciary duty and loss of consortium.

> On appeal, we conduct a de novo review of a trial court's ruling on a motion to dismiss. Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts.[4]

1. As an initial matter, we note that the Johnsons do not contest the dismissal of Count One,[5] which plainly asserted a claim of medical malpractice against Jones. The alleged "negligent or wrongful act or omission" – Jones's misdiagnosis due to his inaccurate interpretation of an ultrasound – occurred in June 2006, triggering at

---

[4] *Lyon v. Schramm*, 291 Ga. App. 48, 49 (661 SE2d 178) (2008) (citations and punctuation omitted), *aff'd*, *Schramm v. Lyon*, 285 Ga. 72 (673 SE2d 241) (2009).

[5] Also, the Johnsons have set forth no argument contesting the dismissal of Count Three, seeking punitive damages.

that time the medical malpractice statute of repose.[6] Given that the Johnsons filed their complaint in 2012, the medical malpractice claim (as set out in Count One) was "barred by OCGA § 9-3-71 (b), which abrogates any action for medical malpractice brought more than five years after the date on which the negligent or wrongful act or omission occurred."[7]

2. The Johnsons contend that the trial court erred in striking Count Two, complaining that the trial court failed to broadly construe the allegations in their

---

[6] *Kaminer v. Canas*, 282 Ga. 830, 834 (1) (653 SE2d 691) (2007) (holding that the statute of repose began running when plaintiff's doctors first failed to diagnose and treat the medical condition); *Lyon*, 291 Ga. App. at 49 (noting that "the statute of repose begins to run when an act of negligence is committed"); *Christian v. Atha*, 267 Ga. App. 186, 187 (598 SE2d 895) (2004) ("Because the statute of repose is unrelated to the accrual of the cause of action, it runs from the date on which the negligent or wrongful act or omission occurred without regard to when the injury arising from the negligent or wrongful act or omission occurred or was discovered.") (citations and punctuation omitted).

[7] *Macfarlan*, supra at 890 (1) (a) (citations and punctuation omitted); see *Wright*, supra (explaining that the statute of repose stands as an "unyielding barrier to a plaintiff's right of action" and "destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists") (citation omitted); *Christian*, supra at 187-188 (concluding that the statute of repose barred the medical malpractice suit, where action was filed more than five years after the date on which the last negligent or wrongful act or omission attributable to the defendants occurred).

6

complaint in their favor[8] so as to recognize that Count Two presented a distinct "breach of fiduciary duty" theory of recovery. The Johnsons' contention is without merit.

The statute of repose found in OCGA § 9-3-71 applies to "an action for medical malpractice."[9]

> As used [therein], the term "action for medical malpractice" means any claim for damages resulting from the death of or injury to any person arising out of: (1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person; or (2) Care or service rendered by any public or private hospital, nursing home, clinic, hospital authority, facility, or institution, or by any officer, agent, or employee thereof acting within the scope of his employment.[10]

---

[8] See *Lyon*, 291 Ga. App. at 49.

[9] OCGA § 9-3-71 (b).

[10] OCGA § 9-3-70; see *Blier v. Greene*, 263 Ga. App. 35, 37 (1) (a) (587 SE2d 190) (2003) (explaining that for purposes of the statute of repose, "medical malpractice" is defined in OCGA § 9-3-70).

This court has recognized that a claim for breach of fiduciary duties – distinct from a claim of professional malpractice – may lie against a licensed professional.[11] But "if a claim of negligence goes to the propriety of a professional decision," then that "claim sounds in professional malpractice."[12] The gravamen of Count Two was

---

[11] See, e.g., *Blier*, supra at 36, 39 (2) (explaining that where "claims are founded upon [defendant's] breach of trust *rather than on negligent or wrongful acts involving his performance of psychiatric services*, they are not barred by the statute of repose"; concluding that claim of breach of fiduciary duty was not barred by the medical malpractice statute of repose, where claim alleged that a licensed psychologist "placed his hands and mouth on the intimate parts of the body of Plaintiff . . . without her consent") (emphasis supplied).

[12] *Baskette v. Atlanta Center for Reproductive Med., LLC*, 285 Ga. App. 876, 879-880 (3) (648 SE2d 100) (2007); see *Bradway v. American Nat. Red Cross*, 263 Ga. 19, 22-23 (426 SE2d 849) (1993) (holding that where plaintiffs' injury – exposure to HIV – stemmed from alleged failure of Red Cross screening procedures to eliminate high risk donors effectively, and was not based on any failure of Red Cross workers to implement established procedures properly, claim was for medical malpractice, because screening procedures were the product of medical knowledge and judgment); *Blackwell v. Goodwin*, 236 Ga. App. 861, 864 (2) (513 SE2d 542) (1999) (determining that claims of battery, negligent hiring, supervision, retention, and entrustment were barred by medical malpractice statute of repose, where claims arose from an intramuscular injection administered by a nurse in the exercise of her professional skill and judgment); *Thompson v. Long*, 225 Ga. App. 719, 720-721 (3) (484 SE2d 666) (1997) (physical precedent only) (rejecting plaintiff's argument that claim for "simple negligence" was not barred by medical malpractice statute of repose, where the complaint alleged that "all injuries resulted from physician's professional malpractice during an emergency C-section"). Compare *Blier*, supra at 38 (1) (a) (concluding that claim seeking recovery for "sexual assault and battery" was not barred by medical malpractice statute of repose, where the underlying facts alleged "intentional, forcible, nonconsensual" conduct that did not involve the

Jones's alleged failure to correctly read the ultrasound and resulting failure to properly diagnose Vernice Johnson's medical condition. Count Two thus amounted to a claim of negligence that went to the propriety of Jones's exercise of medical skill and judgment; that count sought damages for injury to Vernice Johnson arising out of "[h]ealth, medical, . . . or surgical service, diagnosis, . . . treatment, or care "[13] rendered by Jones as her physician.[14] Therefore, the trial court correctly construed Count Two as an "action for medical malpractice" as contemplated by OCGA §§ 9-3-

exercise of professional judgment and therefore could not be construed as medical or professional malpractice).

[13] OCGA § 9-3-70.

[14] See *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 670-671 (2) (639 SE2d 610) (2006) (holding that, despite being denominated as a claim for breach of fiduciary duty, the claim "alleging that [physician] was negligent because he failed to diagnose and treat the B-12 deficiency stated a cause of action for medical malpractice under OCGA § 9-3-70 for damages arising out of acts or omissions involving his medical skill and judgment," and thus the claim was subject to the time limitation set forth in OCGA § 9-3-71); see also *Baskette*, supra at 880-881 (4) (rejecting plaintiff's argument that claim asserted "simple negligence" and thus did not fall within ambit of OCGA § 9-3-70, where the claim "arose out of" a decision involving the exercise of medical skill and judgment and therefore sounded in professional negligence). Accord *Paulin v. Okehi*, 264 Ga. 604 (449 SE2d 291) (1994) (recognizing as presenting a medical malpractice action, allegations that doctor deviated from the standard of care by performing a substandard sonogram, incorrectly interpreting the results, and failing to diagnose a tubal pregnancy, resulting in the rupture and removal of patient's fallopian tube). Compare *Blier*, supra at 36, 39 (2).

9

70, 9-3-71 (b).[15] And because that claim was barred by the statute of repose, the trial court properly dismissed it.[16]

3. DeRienzia Johnson contends that the trial court erred by dismissing his claim for loss of consortium, set forth in Count Four. He asserts that the derivative[17] claim was *not* premised upon medical malpractice (advanced in Count One), but upon breach of fiduciary duty (advanced in Count Two). Given our holding in Division Two,[18] this contention fails.[19]

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*

---

[15] See *Baskette*, supra; *Stafford-Fox*, supra.

[16] See Division 1, supra.

[17] See generally *Douberly v. Okefenokee Rural Elec. Mem. Corp.*, 146 Ga. App. 568, 570 (3) (246 SE2d 708) (1978) ("One spouse's right of action for the loss of the other's society or consortium is a derivative one, stemming from the right of the other.").

[18] Supra.

[19] See *Christian*, supra at 186, n. 1 (holding that the loss of consortium claim failed, where it was derivative of a medical malpractice claim barred by the statute of repose).