**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 20, 2025**

# In the Court of Appeals of Georgia

A24A1554. SNYDER v. THE STATE.

PADGETT, Judge.

In this appeal following the grant of an interlocutory application, Vivian Faith Snyder challenges the trial court's denial of her motion to suppress. Specifically, Snyder contends that the results of a blood draw for a state-administered chemical test should be suppressed because the blood draw was performed by the arresting officer, in violation of OCGA § 40-6-392. For the reasons that follow, we affirm.

When considering the denial of a motion to suppress, we view the evidence "in favor of the court's ruling, and we review de novo the trial court's application of the law to undisputed facts." _Creamer v. State_, 337 Ga. App. 394, 395 (788 SE2d 69) (2016) (citation and punctuation omitted).

I. *Facts and procedural history*

So viewed, the record shows that in December 2022, a Georgia State Trooper saw Snyder speeding in her vehicle and initiated a traffic stop. After an initial investigation, the trooper began investigating Snyder for DUI. The trooper performed a field sobriety test and a portable breath test. The trooper then arrested Snyder for DUI. Snyder allegedly consented to a State-administered test of her blood. The trooper, who is a certified phlebotomist, performed the blood draw for the blood test. Snyder was subsequently charged with DUI (less safe) (alcohol), DUI (per se), and speeding.

Snyder filed a motion to suppress and motion in limine, seeking to suppress the results of the chemical test of her blood. Snyder argued that under OCGA § 40-6-392 (a) (2) the trooper, as the arresting officer, was not permitted to conduct the blood draw. The trial court denied the motion after a hearing. The court certified its ruling for immediate review, and we granted Snyder's application for interlocutory appeal. This appeal follows.

II. *Whether OCGA § 40-6-392 (a) (2) prohibited the trooper from conducting the blood draw*

Snyder first complains that under the statute, the trooper could not conduct the blood draw. OCGA § 40-6-392 (a) (2) states:

> When a person shall undergo a chemical test at the request of a law enforcement officer, only a physician, registered nurse, laboratory technician, emergency medical technician, or other qualified person may withdraw blood for the purpose of determining the alcoholic content therein, provided that this limitation shall not apply to the taking of breath or urine specimens. No physician, registered nurse, or other qualified person or employer thereof shall incur any civil or criminal liability as a result of the medically proper obtaining of such blood specimens when requested in writing by a law enforcement officer[.]

Snyder contends that the trooper could not conduct the blood draw because an arresting officer is not explicitly enumerated and the phrase "other qualified person" does not apply to the arresting officer. However, the plain language of OCGA § 40-6-392 (a) (2) reveals nothing suggesting that an arresting officer is prohibited from serving as an "other qualified person" to withdraw blood. See *Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013) ("[I]f the statutory text is 'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for

statutory meaning is at an end.").[1] In other words, the legislature has plainly stated that in addition to a physician, registered nurse, laboratory technician, and an emergency medical technician, an "other qualified person" may conduct the blood draw. Snyder acknowledges that the trooper was a certified phlebotomist. Additionally, the program that the trooper completed to become a certified phlebotomist was approved of by the Georgia Department of Public Safety, whose policy states that

> [t]his policy establishes the protocol for obtaining a blood draw from a subject by Department of Public Safety (DPS) members who have been trained as law enforcement phlebotomists or who have been trained in blood draws and meet the statutory definition of a qualified person as set out in OCGA 40-6-392(a) (2).

11.08.1 DPS. Snyder's argument is that we must view the trooper only in his role as an officer and that he is incapable of holding multiple roles simultaneously. That is incorrect and unsupported by the statute. Snyder's argument fails to recognize that

---

[1] Snyder also asks us to ignore a case relied on by the trial court, *State v. Guerra*, 169 Idaho 486 (497 P3d 1106) (2021). In *Guerra*, the Supreme Court of Idaho interpreted a similar statute as permitting an officer, also a phlebotomist, to conduct a blood draw. The trial court was permitted to consider *Guerra* as persuasive authority. See *Hill v. Burnett*, 349 Ga. App. 260, 262 (1) (a) (825 SE2d 617) (2019).

the trooper can act as both a law enforcement officer and also a phlebotomist under these circumstances. Accordingly, the trooper was permitted to conduct the blood draw under the statute and under DPS policy.[2]

III. *Whether the trooper's conducting the blood draw is otherwise impermissible*

Relying on the Supreme Court of the United States' opinion in *Schmerber v. California*, 384 U. S. 757 (86 SCt 1826, 16 LE2d 908) (1966), Snyder also suggests that the trooper's performance of the blood draw may constitute an unreasonable search and seizure. In particular, Snyder points to the following two paragraphs in *Schmerber*:

> Finally, the record shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort,

---

[2] In her brief, Snyder contends that under this interpretation of the statute, an arresting officer's duties as a law enforcement officer may be at odds with his or her duties as a medical professional. However, the policy concerns raised by Snyder on appeal are solely the province of the General Assembly, not this Court. See *Patrick v. Kingston*, 370 Ga. App. 570, 578 (1) n.22 (898 SE2d 560) (2024); *Kenerly v. State*, 311 Ga. App. 190, 195 (1) (715 SE2d 688) (2011) ("This court is charged with the duty of interpreting statutes, not enacting them. It is a fundamental principle that the legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional.") (citation and punctuation omitted).

were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain.

We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

384 U. S. at 771-772. To the extent that Snyder suggests that the trooper's blood draw raises some constitutional issue under *Schmerber*, the Supreme Court of Georgia has already determined that this case does not invoke its constitutional question jurisdiction. After the trial court denied her motion to suppress, Snyder filed an application for interlocutory appeal in this Court. See Case No. A24I0122. In her application, as she did in her motion to suppress, Snyder quoted the above-referenced language from *Schmerber*. We transferred the application to the Supreme Court of

6

Georgia on the basis that the application appeared to involve a novel question regarding the constitutionality of a OCGA § 40-6-392 (a). See Case No. A24I0122 (Feb. 16, 2024). The Supreme Court returned the application to this Court, stating:

> Although the Court of Appeals transferred Snyder's application to this Court on the grounds that "Snyder argues that the trial court's interpretation of [OCGA § 40-6-392 (a) (2)] is unconstitutional for various reasons," it is well settled that to fall within this Court's appellate jurisdiction, a constitutional question must either involve the construction of some provision of the Constitution of this State or of the United States, or attack as unconstitutional some law of this State or of the United States. See *Atlanta Indep. Sch. Sys. v. Lane*, 266 Ga. 657, 657 (1996); *McGill v. State*, 209 Ga. 282 (71 SE2d 548) (1952). Moreover, this Court "will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point." *GHG, Inc. v. Bryan*, 275 Ga. 336, 337 (566 SE2d 662) (2002); citing *Haynes v. Wells*, 273 Ga. 106, 108 (3) (538 SE2d 430) (2000). Here, the arguments Snyder made on this issue in her motion to suppress neither challenged the constitutionality of any statute, nor required any novel interpretation or construction of any federal or state constitutional provision and the trial court made no such rulings in its order. Instead, the trial court merely applied the principles of statutory construction and looked to persuasive case law to hold that a law enforcement phlebotomist qualifies as an "other qualified person" under § 40-6-392 (a) (2). As such, this application does not invoke this Court's

constitutional question jurisdiction, and it is, therefore, returned to the Court of Appeals.

See Case No. S24I0662 (Mar. 14, 2024).[3] Additionally, we note that the language Snyder quotes from *Schmerber* is dicta. "We are mindful that dicta from the Supreme Court is not something to be lightly cast aside." *Alexander v. State*, 313 Ga. 521, 531 (4) (870 SE2d 729) (2022) (citation and punctuation omitted). "Such dicta may be of considerable persuasive value." Id. (citation and punctuation omitted). However, as the trooper here was himself a certified phlebotomist performing a medical procedure, we are not presented with "a search involving use of a medical technique, even of the most rudimentary sort, . . . made by other than medical personnel . . . ." Instead, it was a medical procedure performed by medical personnel. See *Bradway v. Am. Nat. Red*

---

[3] The Supreme Court of Georgia "has exclusive jurisdiction over all cases involving construction of the Constitution of the State of Georgia and of the United States and all cases in which the constitutionality of a law, ordinance, or constitutional provision has been called into question." *Atlanta Indep. School System v. Lane*, 266 Ga. 657, 657 (1) (469 SE2d 22) (1996); accord Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). Additionally, the Supreme Court has the ultimate responsibility for determining appellate jurisdiction. See *Saxton v. Coastal Dialysis & Medical Clinic*, 267 Ga. 177, 178 (476 SE2d 587) (1996).

*Cross*, 263 Ga. 19, 21 (426 SE2d 849) (1993) (identifying phlebotomy as "a medical procedure").

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*