A00A2329. HUTCHERSON et al. v. OBSTETRIC & GYNECOLOGIC ASSOCIATES OF COLUMBUS, P.C. et al.

(543 SE2d 805)

BARNES, Judge.

Acting individually and as the administrator of the estate of Pamela Hutcherson, Jeffery Hutcherson sued Obstetric & Gynecologic Associates of Columbus, P.C., and Charles Stamey, M.D., for medical malpractice. Hutcherson filed suit on February 5, 1999, for damages resulting from the death of his wife Pamela on February 7,

1994. Pamela Hutcherson, who was 37 weeks pregnant, died of a heart attack, and her unborn child died with her. The defendants moved for summary judgment, arguing that Hutcherson's action was barred by the two-year statute of limitation and the five-year statute of repose. The trial court granted the motion, and Hutcherson appeals. For the reasons that follow, we affirm the trial court's judgment.

1. On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 803 (500 SE2d 591) (1998); *Lane v. Spragg*, 224 Ga. App. 606 (481 SE2d 592) (1997).

2. Viewed in this light, the record shows that 31-year-old Pamela Hutcherson became pregnant in the summer of 1993. Dr. Stamey was her obstetrician, as he had been for her first child, a daughter born in 1989, and he or someone in his practice saw Pamela regularly throughout her pregnancy. On February 7, 1994, Pamela suffered a heart attack at her house, and despite efforts at cardiopulmonary resuscitation, she was pronounced dead upon her arrival at the hospital. Her eight-and-a-half-pound unborn child died with her.

Hutcherson's deposition is not included in the record before us, and we uncovered no request by Hutcherson to require Dr. Stamey to file Hutcherson's original deposition in the trial court.[1] However, according to Hutcherson's verified complaint, Dr. Stamey told Hutcherson that Pamela died of a heart attack that was caused by a heart murmur. The complaint does not indicate when this statement was made. Dr. Stamey testified in deposition that, while he remembered talking to Hutcherson about Pamela's death, he did not recall specifically what he said. Hutcherson further alleges in his complaint that an autopsy revealed that his wife's death was caused by "peripartum cardiomyopathy" rather than a heart murmur, a conclusion confirmed by the medical examiner's affidavit. This discrepancy forms the nucleus of Hutcherson's fraud argument.

Hutcherson argues that, because Dr. Stamey incorrectly described the etiology of Pamela's heart attack as being caused by a heart murmur instead of by "peripartum cardiomyopathy," Hutcherson was misled into failing to request a copy of the autopsy report, which was completed April 15, 1994.[2] Because of this incorrect information, he asserts, "he was deterred from further investigating the

---

[1] Because the record does not indicate that the trial court considered Hutcherson's deposition in granting summary judgment to Dr. Stamey, our inquiry does not end here. See *Tahamtan v. Sawnee Elec. Membership Corp.*, 228 Ga. App. 485 (491 SE2d 918) (1997).

[2] However, the record contains a letter from the medical examiner to Pamela Hutcherson's parents dated April 18, 1994, only three days after the autopsy was completed.

medical circumstances surrounding his wife's death."

Hutcherson submitted the affidavit of a medical expert who noted that Pamela's medical records stated that she complained in December 1993 of shortness of breath, edema, and an irregular heartbeat. The expert opined that Dr. Stamey's apparent failure to perform any diagnostic studies or tests at that time breached applicable standards of care. Hutcherson also submitted the affidavit of the medical examiner who performed the autopsy, who stated that

> [a] heart murmur and cardiomyopathy both may effect [sic] how the heart functions, but it is not appropriate to state that the cause of death in this case is due to a heart murmur when in actuality the deceased succumbed to peripartum cardiomyopathy. Peripartum cardiomyopathy simply means that the heart dysfunction for unknown reasons is related to current or recent pregnancy.

In the letter to Pamela's parents, the medical examiner explained that peripartum cardiomyopathy "is a very rare disorder that affects pregnant woman [sic] either a few weeks before or few weeks after they deliver a child. . . . Unfortunately, it often produces little in the way of symptoms."

While Hutcherson amended his complaint to add allegations of evidence spoliation and breach of fiduciary, private and legal duties and again amended it to allege that Dr. Stamey intended to mislead him, we need not address these allegations initially because they do not relate to the allegation of fraud that could estop the defendant from asserting the defense of the statute of repose. Similarly, his assertion that Dr. Stamey failed to forward records to the Georgia Bureau of Investigation showing he prescribed codeine to Pamela, a medication to which she was allegedly allergic, three days before she died, is also not relevant to our initial inquiry, because Hutcherson has not argued that this failure prevented him from further investigating the circumstances surrounding his wife's death.

The allegation we must first focus on is whether Dr. Stamey's statement attributing Pamela's heart attack to a heart murmur rather than peripartum cardiomyopathy is a sufficient allegation of fraud to allow the plaintiff to withstand summary judgment on the issue of the statutes of limitation and repose. In considering this allegation, we will assume for the sake of argument only that Hutcherson and Dr. Stamey had a confidential relationship.

Under the statute of limitation, a medical malpractice claim must be filed within two years after the date on which a death arising from a negligent act or omission occurred. OCGA § 9-3-71 (a). Under OCGA § 9-3-96, if a defendant commits fraud that deters a

plaintiff from bringing an action, the period of limitation runs only from the time the plaintiff discovers the fraud. The Code further provides that "in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." OCGA § 9-3-71 (b). Here, Hutcherson alleged that Dr. Stamey's failure to perform diagnostic tests in December 1993 violated applicable standards of care, and suit was not filed until more than five years later, on February 5, 1999. Thus the action was not only filed after the two-year statute of limitation expired, but also outside the time limits of the statute of repose.

However, while fraud does not toll the statute of repose,

> if the evidence of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit is found by the jury to exist, then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of ultimate repose.

*Esener v. Kinsey*, 240 Ga. App. 21, 23 (522 SE2d 522) (1999), cert. denied, 240 Ga. App. 905 (2000).

Hutcherson's claim that Dr. Stamey is estopped from asserting the statute of repose defense is premised on his argument that he was deterred from further investigating his wife's cause of death because the doctor incorrectly ascribed Pamela's heart attack to a heart murmur. However, nothing in the record shows that Dr. Stamey knew the medical examiner's diagnosis of peripartum cardiomyopathy when Dr. Stamey allegedly told Hutcherson that Pamela's heart attack was caused by a heart murmur.

We have previously reversed a trial court's denial of a motion for summary judgment in a medical malpractice case in which the plaintiff claimed

> she was deterred from learning the truth of her condition by defendant's knowing failure to inform her that she had undergone an incomplete hysterectomy. However, she has failed to show any inference that defendant knew the cervix or any part of it remained. At best, plaintiff has shown defendant failed to detect the remaining tissue. While this failure may be evidence of negligence, it is not evidence of fraud [that] would toll the statute of limitation. A patient must present evidence of a known failure to reveal negligence in order to show fraud. . . . In the case at bar, there is absolutely nothing from which we can make any inference that the defendant doctor had any knowledge of improper

conduct on his part or that he tried to cover up such conduct in any way. . . .

(Citations and punctuation omitted.) *Hendrix v. Schrecengost*, 183 Ga. App. 201, 202 (1) (358 SE2d 486) (1987).

Similarly, we affirmed the grant of summary judgment to a defendant doctor when the plaintiff's

only allegation of fraud in appellant's amended complaint is that his condition was misdiagnosed on September 4, 1979, and that the physician continued to treat him until March 18, 1980, when he ordered X-rays. Such an allegation is insufficient to raise an issue of fraud, as misdiagnosis only raises an issue of negligence under OCGA § 9-3-70 (a) (2).

*Johnson v. Gamwell*, 165 Ga. App. 425, 426-427 (301 SE2d 492) (1983).

Hutcherson knew his wife died of a heart attack, and we conclude that a doctor's attribution of the cause to a heart murmur rather than cardiomyopathy does not constitute sufficient evidence of fraud to create a jury question on whether the defendant is equitably estopped from raising the defense of the statute of repose. The trial court did not err in granting summary judgment to the defendants.

3. The remaining enumerations of error are rendered moot in light of our holding in Division 2.

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED DECEMBER 28, 2000 —
RECONSIDERATION DENIED JANUARY 25, 2001 — ■

*Neal H. Howard, Joann Brown-Williams, William D. James*, for appellants.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Robert C. Martin, Jr.*, for appellees.