**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**September 19, 2012**

# In the Court of Appeals of Georgia

A12A1138. MACFARLAN et al. v. ATLANTA GASTROENTEROLOGY ASSOCIATES, INC. et al.

ANDREWS, Judge.

After John Macfarlan's death from colon cancer, his parents brought this medical malpractice action against defendants Atlanta Gastroenterology Associates, Inc. (AGA) and R. Carter Davis, M.D., who had treated Macfarlan since 1994. On appeal from the trial court's grant of summary judgment to defendants, plaintiffs argue inter alia that the statute of repose does not bar their action. We affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . [T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there

is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Plaintiffs' brief does not contain a statement of facts, with the result that we are entitled to depend on defendants' statement of the same. See Court of Appeals Rule 25 (a) (appellant's brief must contain a statement of "the material facts relevant to the appeal"). The relevant facts are not in dispute, however, Dr. Davis first treated Macfarlan on January 9, 1994, when a colonoscopy showed that Macfarlan was suffering from ulcerative colitis, which he had first contracted at the age of 15. Dr. Davis advised Macfarlan that his biopsy showed high-grade dysplasia, or abnormal tissue growth, and that his colon might need to be removed. A second biopsy two months later, after a new medication regimen was in place, and taken for purposes including the detection of cancer, confirmed the longstanding condition of ulcerative colitis but showed only low-grade dysplasia. When Macfarlan decided after consultation not to remove his colon, Dr. Davis recommended a sigmoidoscopy in six months and a third colonoscopy in a year.

Macfarlan returned in May 1995 for a follow-up colonoscopy, which showed chronic colitis but no dysplasia. Dr. Davis increased Macfarlan's medication so as to continue to control the colitis and recommended a colonoscopy the following year. In November 1995, after an episode of acute pain associated with passing a gallstone, Macfarlan was diagnosed with sclerosing cholangitis, or inflammation of the gallbladder. In light of this new condition, Macfarlan's life expectancy was put at eight to ten years.

In the course of treatment at AGA over the next six years, Macfarlan received five more colonoscopies, none of which showed either high- or low-grade dysplasia. When a sixth colonoscopy performed in November 2001 showed high-grade dysplasia and an identifiable lesion, however, Dr. Davis referred Macfarlan to a colorectal surgeon. Macfarlan died of metastatic cancer less than three months later on January 25, 2002.

On January 22, 2004, plaintiffs filed their suit for medical malpractice accompanied by an affidavit from Dr. William Kaiser, M.D. The complaint alleged that as a result of substandard treatment from January 1994 to June 1996 "and thereafter," Macfarlan's cancer was not timely discovered, resulting in his death. In his accompanying affidavit, Dr. Kaiser stated his opinion that Dr. Davis had breached

3

the applicable standard of care when, after the discovery of high-grade dysplasia, he failed to obtain additional consultation and treatment including biopsies and a colon resection, with the proximate result that Macfarlan died prematurely. At deposition, Dr. Kaiser made clear that his criticisms of Dr. Davis's performance arose from perceived failures in treatment in 1994-1995, when high-grade dysplasia was diagnosed and treated, and not at any time after 1995.

After defendants moved for summary judgment in June 2006, on October 13, 2006, plaintiffs filed an amended complaint including claims under the Georgia Fair Business Practices Act (OCGA § 10-1-390 et seq.) and the Uniform Deceptive Trade Practices Act (OCGA § 10-1-370 et seq.). The amended complaint also attached an affidavit from Dr. Stuart Finkel, M.D. Dr. Finkel's affidavit stated his opinion that Dr. Davis had performed insufficiently frequent and comprehensive biopsies between 1994 and 2001. After a hearing, the trial court held that plaintiffs' original complaint did not contain any allegations of negligence occurring after 1995 and was thus barred by the medical malpractice statute of repose. The trial court also held that the claims asserted in the amended complaint did not relate back under OCGA § 9-11-15 (c) because they did not arise out of the same conduct, transaction, or occurrence set forth in the original complaint.

4

1. OCGA § 9-3-71 sets out both a statute of limitation and a statute of repose applicable to actions for medical malpractice:

(a) Except as otherwise provided in this article, *an action for medical malpractice shall be brought within two years* after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.

(b) Notwithstanding subsection (a) of this Code section, *in no event* may an action for medical malpractice be brought *more than five years after the date on which the negligent or wrongful act or omission occurred*.

(c) Subsection (a) of this Code section is intended to create a two-year statute of limitations. *Subsection (b) of this Code section is intended to create a five-year statute of ultimate repose and abrogation.*

(Emphasis supplied.)

As the Supreme Court of Georgia has noted, OCGA § 9-3-71 "'clearly distinguishes between the statutes of limitation and the statutes of repose.'" *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005), quoting *Siler v. Block*, 204 Ga. App. 672, 674 (1) (420 SE2d 306) (1992). OCGA § 9-3-71 (c) "expressly designates OCGA § 9-3-71 (b) as 'a five-year statute of ultimate repose and abrogation,' differentiating it from the 'two-year statute of limitations' created by OCGA § 9-3-71

5

(a)." *Simmons*, 279 Ga. at 379. Our Supreme Court describes this difference as follows:

> A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. . . . *A statute of repose stands as an unyielding barrier to a plaintiff's right of action.* The statute of repose is absolute; the bar of the statute of limitation is contingent. *The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.*

(Emphasis supplied; citations and punctuation omitted.) Id. No external factor, whether a lack of discovery, infancy, incompetency, or fraud, may toll a statute of repose because any such tolling "would deprive the defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose." Id. at 380 (citation and punctuation omitted.)

(a) Although plaintiffs' original complaint, as clarified by the affidavit and testimony of Dr. Kaiser, alleged negligence as to the course of treatment administered on Macfarlan in 1994-1995, the complaint itself was filed in 2004. Thus the trial court did not err when it held that the allegations of the original complaint are barred

6

by OCGA § 9-3-71 (b), which abrogates any action for medical malpractice brought "more than five years after the date on which the negligent or wrongful act or omission occurred." Id.; *Simmons*, 279 Ga. at 380; see also *Pottinger v. Smith*, 293 Ga. App. 626, 629 (667 SE2d 659) (2008) (reversing denial of summary judgment when complaint and expert affidavit, taken together, failed to maintain a question of material fact whether defendants were grossly negligent).

(b) With the exception of one assertion on appeal, made without citation to the record, that "there has been fraudulent concealment" in the course of Macfarlan's treatment, plaintiffs have argued only negligence as the cause of their injury. Despite their failure to cite any evidence in support of this proposition, however, plaintiffs also assert that defendants should be estopped from asserting a statute-of-repose defense because "'[t]he sun never sets on fraud.'" See *Esener v. Kinsey*, 240 Ga. App. 21, 23 (522 SE2d 522) (1999) (affirming denial of defendant's motion for judgment on the pleadings of a medical malpractice action where plaintiff could conceivably produce evidence to show that defendant was estopped from asserting the statute of repose as a defense), quoting *Hill v. Fordham*, 186 Ga. App. 354, 357-358 (367 SE2d 128) (1988).

7

We reject plaintiffs' insinuations as unsupported by either this record or applicable law. Our cases are clear that "[a] patient must present evidence of a known failure to reveal negligence in order to show fraud." (Citation and punctuation omitted.) *Hutcherson v. Obstetric & Gynecologic Assocs. of Columbus*, 247 Ga. App. 685, 688 (2) (543 SE2d 805) (2000). Thus, and in the absence of any evidence authorizing a reasonable inference that defendants in this case "had any knowledge of improper conduct" or that they "tried to cover up [their] conduct in any way," id. at 688, the trial court properly granted them summary judgment under OCGA § 9-3-71 (b). Id. at 689 (2) (affirming grant of summary judgment in the absence of a jury question whether defendant was estopped from raising the defense of the statute of repose).

2. It follows from what has already been said that plaintiffs' amended complaint cannot relate back under OCGA § 9-11-15 (c) so as to revive a cause of action already extinguished by the statute of repose.

OCGA 9-11-15 (c) provides in relevant part: "Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Specifically, allegations of a continuing

8

failure to correct an initial misdiagnosis do not toll the statute of limitation laid out in OCGA § 9-3-71 (a). *Frankel v. Clark*, 213 Ga. App. 222, 224 (444 SE2d 147) (1994) (rejecting plaintiff's argument that defendant dentist's alleged failures to correct his previous negligence could constitute "additional acts of negligence" so as to toll the statute of limitation).

Even less could we interpret allegations concerning medical malpractice so as to effect a tolling of the "statute of ultimate repose and abrogation" laid out in OCGA § 9-3-71 (c). In *Wright v. Robinson*, 262 Ga. 844 (426 SE2d 870) (1993), for example, the Supreme Court of Georgia held that the statute of repose controls any attempt to renew a medical malpractice action because "the legislature never intended for the dismissal and renewal statutes to overcome the statute of repose." Id. at 846 (1). As the Eleventh Circuit has held, moreover, a trial court is within its rights to deny a motion to amend a complaint for medical malpractice when "new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery." *Moore v. Baker*, 989 F2d 1129, 1131 (11th Cir. 1993) (citation and punctuation omitted). This is so for two reasons: because the defendant had no previous notice of the claims now asserted against him, and because those claims could have been included in the original complaint. See id. at 1131 (affirming denial of motion to amend complaint

9

for medical malpractice where amendment concerned actions occurring after the subject matter of the original complaint); *Smith v. Lockridge*, 288 Ga. 180, 186 (702 SE2d 858) (2010) (affirming grant of summary judgment where matters alleged in plaintiffs' amended complaint were or could have been put at issue in the original complaint, which was already the subject of a prior and binding adjudication on the merits).

As defendants point out, the negligence claims asserted in the amended complaint and supporting affidavit concern the procedure and method of the biopsies performed on Macfarlan between 1994 and 2001, whereas the original complaint, as clarified by Dr. Kaiser's affidavit and deposition, concerned only the course of treatment in 1994-1995. In any case, and to the extent that the claims of plaintiffs' amended complaint are taken as "arising out of the conduct, transaction, or occurrence" set forth in the original complaint, they are barred by the statute of repose laid out in OCGA § 9-3-71 (b). See *Krasaeath v. Parker*, 212 Ga. App. 525 (441 SE2d 868) (1994) (even if action for contribution against radiologist was not barred by the 20-year statute of limitation, it was barred by the 5-year statute of repose). Even assuming that some claims asserted for the first time in the amended complaint could be construed as a distinct set of actions and omissions ending in 2001,

moreover, or more than two years before that amended complaint was filed, they would be barred under the statute of limitation laid out in OCGA § 9-3-71 (a). *Frankel*, 213 Ga. App. at 224.

3. Plaintiffs also assert that the trial court erred when it granted summary judgment on their claims under the Fair Business Practices Act (FBPA) and the Uniform Deceptive Trade Practices Act (UDTPA). Again, we disagree.

As we have already noted, these claims were asserted only in the amended complaint, with the result that they cannot be held to relate back under OCGA § 9-11-15 (c). *Smith*, 288 Ga. at 186. As the Supreme Court of Georgia has held, moreover, "[m]edical malpractice claims recast as FBPA claims cannot form the basis for a FBPA violation. To hold otherwise would transform every claim for medical malpractice into a FBPA claim." *Henderson v. Gandy*, 280 Ga. 95, 98 (623 SE2d 465) (2005). Rather, a plaintiff states an FBPA claim only when the allegations of a complaint concern "any entrepreneurial or business aspect of the medical practice," id. at 99, which the amended complaint does not. The same rationale also dooms plaintiffs' claims under the UDTPA. Given that the latter statute has no plausible connection to medical malpractice claims, see OCGA § 10-1-372 (defining deceptive

11

trade practices), it is not surprising that plaintiffs have cited no authority whatsoever in support of their contention that such a connection could exist.

For all of these reasons, the trial court did not err when it granted summary judgment to defendants.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*